# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **M. KATHLEEN MCKINNEY,** | **CIVIL ACTION** |
| **Plaintiff** | |
| **VERSUS** | **NO. 12-1934** |
| **CREATIVE VISION RESOURCES, LLC** | **SECTION "E"** |
| **Defendant** | |

## ORDER AND REASONS

The Court has pending before it a §10(j) petition for temporary injunctive relief filed by Petitioner Kathleen McKinney, Regional Director of the National Labor Relations Board ("Petitioner").[1] The Court has reviewed the briefs, the Administrative Law Judge's findings, and the law, and now issues this order and reasons granting the petition.

## BACKGROUND[2]

This case arises out of the labor relationship between garbage hoppers – the individuals who ride on the back of garbage trucks and "hop" off the trucks to collect garbage – and their employer, Berry.[3] Richard's Disposal, Inc. (not a party to this litigation) is a municipal garbage collection contractor for the City of New Orleans, Louisiana, owned by Alvin Richard Jr. After August 2005, Richard's Disposal entered into

---

[1] R. Doc. 1.

[2] The Court draws this statement of background facts from the ALJ's factual findings, which are entitled to deference, *see N.L.R.B. v. Irving Ready-Mix Inc.*, 780 F.Supp.2d 747, 752 n.1 (N.D. Ind. 2011), *aff'd*, 653 F.3d 566 (7th Cir. 2011), well-founded, and not seriously disputed.

[3] "Berry" is shorthand for a series of entities which the parties agree are indistinguishable for the purposes of this litigation. R. Doc. 29 at 3.

a verbal contract with Berry, pursuant to which Berry would provide hoppers to work on Richard's Disposal's trucks. Soon thereafter, Berry was providing nearly all of Richard's Disposal's hoppers.

Between 2007 and October 2009, after a Board-supervised election, Local 100, Service Employees International Union represented the hoppers in a collective bargaining agreement between the hoppers and Berry. The bargaining unit included Berry-employed hoppers who worked on garbage trucks both for Richard's Disposal and for Metro Disposal, another garbage company. In October 2009, Local 100 disaffiliated from SEIU and continued to represent the hoppers as Local 100, United Labor Unions. From the perspective of the hoppers, the disaffiliation had no noticeable impact. All of the hoppers automatically became members of Local 100, ULU; nine out of ten board members of Local 100, SEIU remained as board members of Local 100, ULU; and Local 100, ULU continued to represent the hoppers for almost two years until the unfair labor practice alleged in this case. At some point in time, Berry lost its contract with Metro Disposal and ceased providing hoppers to that garbage company.

In May 2011, Alvin Richard III ("Richard III"), owner and president of Creative Vision Resources ("CVR") (and also a vice president of Richard's Disposal), distributed hiring applications to the Berry hoppers who worked for Richard's Disposal. On June 1, 2011, Richard's Disposal informed Berry it no longer needed Berry's services. On June 2, 2011, CVR assumed Berry's former role and began supplying hoppers to Richard's Disposal. On that first day, June 2, 2011, CVR employed and supplied forty-four hoppers to Richard's Disposal trucks. At least forty-three of those forty-four hoppers were previously employed by Berry and represented by the Union.

On June 6, 2011, Local 100, ULU mailed a letter to CVR requesting CVR to recognize and bargain with the union as the exclusive bargaining representatives of the Richard's Disposal hoppers. According to Petitioner, since that time CVR has refused to recognize and bargain in good faith with the Union.

The union, under the provisions of the NLRA, filed an unfair labor practice charge with the National Labor Relations Board on June 17, 2011, alleging that CVR had failed to recognize and negotiate with it, in violation of various provisions of the NLRA. An extended investigation ensued during which CVR had the opportunity to present evidence regarding the alleged violations.[4] After determining that CVR had in fact committed unfair labor practices, the Board issued a Complaint against CVR on March 30, 2012. Preparations for a trial on that Complaint continued, and the Board also filed the present § 10(j) petition seeking temporary injunctive relief ordering CVR to recognize and bargain with the Union pending final action by the Board.

While this petition was pending, the ALJ concluded the trial and issued his Decision, which the Court entered into the record.[5] The ALJ concluded that CVR violated the NLRA by refusing to recognize and bargain with Local 100 as the representative of the hoppers.[6]

### STANDARD OF LAW

Petitioner seeks injunctive relief pursuant to § 10(j) of the NLRA. 29 U.S.C. § 160(j). Injunctive relief requires a two-part showing: "(1) whether the Board, through its Regional

---

[4] *See* R. Doc. 15 at 5-13 (summarizing procedural history).

[5] R. Doc. 29; *see also* R. Doc. 28 (order and reasons denying motion to strike the Decision)

[6] R. Doc. 29 at 29.

Director, has 'reasonable cause' to believe that unfair labor practices have occurred, and (2) if they did, whether injunctive relief is 'just and proper.'" *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 850 (5th Cir. 2010). "A district court need only decide that the NLRB's theories of law and fact are neither insubstantial nor frivolous to rule that the Board had reasonable cause." *Id.* Injunctive relief is "just and proper" if it "restores the status quo ante as intended by § 10(j)." *See id.* at 857.[7]

The Court also notes that:

[A] District Court, deciding whether to grant a petition for Section 10(j) injunctive relief, is advised to give deference to the opinions rendered by the ALJ, particularly in regards to the ALJ's findings in relation to the petitioner's likelihood of success on the merits. *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 502-03 (7th Cir. 2008).

> [T]he ALJ's decision . . . is [ ] relevant to the propriety of section 10(j) relief. Assessing the Director's likelihood of success calls for a predictive judgment about what the Board is likely to do with the case. The ALJ is the Board's first-level decisionmaker. Having presided over the merits hearing, the ALJ's factual and legal determinations supply a useful benchmark against which the Director's prospects of success may be weighed.

*Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 288, 300-301 (7th Cir. 2001) (holding that the Director had a strong-likelihood of success on the merits, based, in large part, upon the ALJ's decision in favor of the Director).

*N.L.R.B. v. Irving Ready-Mix Inc.*, 780 F.Supp.2d 747, 752 n.1 (N.D. Ind. 2011), *aff'd*, 653 F.3d 566 (7th Cir. 2011).

---

[7]CVR cites a recent Supreme Court case addressing the degree of likelihood of irreparable injury necessary to support injunctive relief. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 21-22 (2008). But *Winter* did not address § 10(j) injunctions. Accordingly, the Court will follow binding, post-*Winter* Fifth Circuit authority holding that the two-part inquiry, and "not a hybridization with a traditional four-part equity inquiry, is the correct test to use when considering a § 10(j) petition." *El Paso Disposal*, 625 F.3d at 854.

**ANALYSIS**

CVR disputes both parts of the 10(j) test. It contends there is no reasonable cause to believe that it committed unfair labor practices because it is not a successor to Berry obligated to negotiate with Local 100 ULU. Second, CVR contends that injunctive relief is not "just and proper" in this case, largely because of the 16-month gap between the filing of the charge and this 10(j) petition.

**A.   Reasonable Cause**[8]

It is well settled that, under certain circumstances, a successor to an employer is subject to the predecessor's duty to negotiate with the representatives of the appropriate employee unit, and the failure to negotiate can be an unfair labor practice. *See NLRB v. Burns Int'l Security Servs., Inc.*, 406 U.S. 272, 280-81 (1972) (holding that "where the bargaining unit remains unchanged and a majority of the employees hired by the new employer are represented by a recently certified bargaining agent," the successor employer must "bargain with the incumbent union").

CVR contends that this successorship doctrine does not apply in these circumstances. First, CVR observes that Berry, the predecessor employer, bargained with a bargaining unit defined as hoppers who worked on trucks operated by Richard's Disposal *and* Metro Disposal. Because CVR only hired hoppers who worked on Richard's Disposal trucks, CVR contends that it has not hired a majority of the bargaining unit and therefore

---

[8]Counsel for CVR arguably conceded at oral argument that the Board has reasonable cause. Moreover, the ALJ found that CVR had actually committed an unfair labor practice, a finding which is "particularly" entitled to deference. *See Irving Ready-Mix Inc.*, 780 F. Supp. 2d at 752 n.1. Nonetheless, in an abundance of caution the Court will analyze the parties' arguments.

is not a *Burns* successor to Berry.[9] But as the Board points out, the relevant question is not whether CVR hired a majority of the bargaining unit; rather, the question is whether the majority *of the employees CVR hired* were from the bargaining unit. *See* 406 U.S. at 281 (applying successor liability when "the bargaining unit remains unchanged and a majority of the employees *hired by the new employer* are represented") (emphasis added). Here, that is indisputably true: CVR began operations with 44 hoppers, all of whom had previously worked for Berry and been represented by Local 100, ULU.[10] Thus, CVR is plainly a *Burns* successor to Berry.

CVR also contends that, even if it is a successor to Berry, it has no duty to negotiate with Local 100, ULU, because Local 100, ULU is not the union that originally negotiated the collective bargaining agreement with Berry. "[W]hen there is a union merger or affiliation, an employer's obligation to recognize and bargain with an incumbent union continues unless the changes resulting from the merger or affiliation are so significant as to alter the identity of the bargaining representative." *Raymond F. Kravis Ctr. for the Performing Arts*, 351 NLRB 143, 147 (2007). No vote on affiliation is required to continue the obligation to bargain, as CVR contends, if there is substantial continuity between unions. *See id.* There is "substantial continuity" between a predecessor and successor union when there is no "change that is 'sufficiently dramatic' to alter the union's identity." *See id.* (citation omitted).

CVR argues that there is no "substantial continuity" on these facts because ULU is

---

[9] *See* R. Doc. 12 at 9-10.

[10] R. Doc. 29 at 9.

smaller than SEIU and is therefore a different union.[11] But CVR cites no authority finding "national prominence, strength, resources, benefits, and influence" to be criteria for "substantial continuity." Rather, the relevant factors appearing from the record suggest substantial continuity. As explained above, after the disaffiliation Local 100 continued for almost two years to represent the hoppers working for Berry on Richard's Disposal trucks, with oversight from a largely unchanged board of directors. At the very least, this is a substantial and non-frivolous theory of fact and law establishing continuity between Local 100 SEIU and Local 100 ULU, which is all the Board must establish for the purposes of § 10(j) temporary injunctive relief.

In short, the Board has more than reasonable cause to believe CVR is the successor to Berry and Local 100 ULU is the successor to Local 100 SEIU. Therefore, CVR was obligated to negotiate with Local 100 ULU as the representative of the bargaining unit. It is undisputed that CVR has not negotiated with the Union, and so the Board has established reasonable cause to believe CVR has engaged in an unfair labor practice. The first part of the § 10(j) test is satisfied.

## B.     Equitable Relief

Section 10(j) temporary injunctive relief is warranted if it is "just and proper." *El Paso Disposal*, 625 F.3d at 856. This determination "demands some exercise of discretion on the part of the trial judge." *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1189 (5th Cir. 1985). Relevant factors include (1) any delay in seeking the injunctive relief, (2) whether the injunction would maintain or alter the status quo ante, and (3) whether the

---

[11]R. Doc. 12 at 11.

injunction "would be any more effective than a final Board order at this point." *See id.* at 1192-93.

The Court has reviewed the record and the parties' arguments and, exercising its discretion, concludes that temporary injunctive relief pending final Board action is just and proper under these circumstances. As set forth above, and as confirmed by the ALJ's findings, CVR was obligated as the successor employer to negotiate with Local 100, ULU as the representative of the hoppers. CVR's failure as successor to negotiate with the Union disrupted the status quo ante, and temporary injunctive relief will restore that status quo. *Cf. El Paso Disposal*, 625 F.3d at 856-57 (affirming temporary injunction which reinstated workers because denying the relief "would merely reward EPD for its unfair labor practices"). Moreover, granting the relief sooner rather than later will offer greater vindication of the hoppers' interests than would waiting for final Board action.

The gap between the initial unfair labor practice charge and the filing of this 10(j) petition does not have as much significance as CVR asserts. Although delay can be a factor, it is far from dispositive. *See El Paso Disposal*, 625 F.3d at 856; *Pilot Freight*, 515 F.2d at 1193. The Court can identify no deliberate delay or gamesmanship, nor any reason why restoring the bargaining relationship now would be less effective than later NLRB relief. Moreover, the progression from initial charge to the Board investigation (which CVR did nothing to expedite) is reasonable, particularly because the investigation and subsequent ALJ findings have assisted the Court in deciding this petition. *Cf. El Paso Disposal*, 625 F.3d at 856 (approving of case affirming eighteen month delay).

CVR's arguments against the justness or propriety of temporary injunctive relief fall flat. First, the record does not support CVR's assertion that the Board ever affirmatively

took injunctive relief off the table and then reversed course;[12] thus, the Court can identify no estoppel or admission that injunctive relief is unnecessary. Nor is it apparent how the Board has acted with "unclean hands" or with hints of "powerful agency harassment and abuse." The Board pursued what it considered, and what the ALJ and this Court have found to be, a clear-cut unfair labor practice, and did so with the statutory remedies available to it. On this record, the Court perceives no "powerful agency harassment and abuse."[13] Equally unpersuasive is CVR's insistence that it has "clean hands" because it has negotiated in good faith and offered everything Local 100 ULU wants—"except for the wages and holidays provisions."[14] Needless to say, CVR cites no authority for the proposition that a party may moot or preempt a request for injunctive relief merely by offering to negotiate about the relief without agreeing to the relief itself.

## CONCLUSION

For the foregoing reasons, the Court finds that both parts of the two-prong test are met and §10(j) temporary injunctive relief is warranted. CVR offered no arguments against the specific terms and scope of the temporary injunction sought in the petition. Accordingly, **IT IS ORDERED** that the petition is **GRANTED**. A separate Order setting forth the terms of the injunction shall issue.

---

[12] R. Doc. 12 at 14-15.

[13] *Id.* at 15.

[14] *Id.* at 16.

New Orleans, Louisiana, this 8th day of July, 2014.

_____
SUSIE MORGAN
UNITED STATES DISTRICT JUDGE